UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DORCUS DEWAYNE ALLEN,

           Petitioner,

    v.

BRENT BOMKAMP,

           Respondent.

CASE NO. 3:20-cv-06143-RJB-JRC

REPORT AND RECOMMENDATION

NOTED FOR: May 14, 2021

    The District Court has referred this petition for a writ of habeas corpus to United States Magistrate Judge J. Richard Creatura. The Court's authority for the referral is 28 U.S.C. § 636(b)(1)(A) and (B) and local Magistrate Judge Rules MJR3 and MJR4. Petitioner filed the petition pursuant to 28 U.S.C. § 2241.

    In 2011, a jury convicted petitioner of four counts of first degree murder as an accomplice in the murders of four police officers, based on the State's evidence that petitioner had been the getaway driver while his accomplice gunned the officers down. However, the jury acquitted petitioner of certain aggravating circumstances that would have increased his sentence

REPORT AND RECOMMENDATION - 1

to life without the possibility of parole. The Washington Supreme Court reversed and remanded the first degree murder convictions for prosecutorial misconduct. Upon an interlocutory appeal after remand, the Washington Supreme Court again reviewed the case and determined that double jeopardy prevented retrial of those same aggravating factors because petitioner had been unanimously acquitted of them. Petitioner now raises two grounds for relief. First, he claims that the jury's acquittal of one of those aggravating factors collaterally estops him from being liable as an accomplice to first degree murder. And second, he argues that double jeopardy bars retrial of the first degree murder charges altogether.

The Court recommends that the petition be denied. First, petitioner's acquittal of an aggravating factor that pertained to engaging in a "common scheme or plan" does not bar retrial on accomplice liability because the two issues are entirely distinct. Accomplice liability can exist in the absence of any common scheme or plan. A common scheme or plan can exist without an accomplice.

Second, petitioner's acquittal of certain aggravating circumstances bars retrial only of those circumstances and not of the base offense of first degree murder. Double jeopardy protects against a second prosecution for the *same offense* after acquittal. Acquittal of certain aggravating circumstances does not bar retrial of the offense without those aggravating circumstances.

Therefore, neither double jeopardy nor collateral estoppel bars the State from retrying petitioner for premeditated first degree murder.

REPORT AND RECOMMENDATION - 2

# BACKGROUND

## I.  Facts

In November 2009, Maurice Clemmons shot and killed four Lakewood police officers. *State v. Allen*, 182 Wn.2d 364, 369 (2015) ("*Allen I*"). Petitioner Dorcus[1] Allen drove Clemmons to and from the crime scene and was tried for the murder of the officers as an accomplice. *Id*. The Washington Supreme Court, on Allen's direct appeal after trial, summarized the relevant facts as follows:

> This tragic story began in May 2009 when officers responded to reports that Clemmons was throwing rocks through his neighbors' windows. Clemmons responded violently when officers arrived at the scene, and he was arrested for punching officers. He posted bail in November 2009, the month of the shootings. Shortly after his release, Clemmons attended Thanksgiving dinner at his aunt's house, where he expressed animosity toward the police. Specifically, he announced that if the police arrived to look for him, he would kill them and then go across the street to the elementary school and commit further acts of violence. Clemmons brandished a handgun while he described these acts. Allen, who was a friend and employee of Clemmons, was present at that dinner.
>
> Three days later, Clemmons contacted Allen and told him they were going to wash the company truck. With Allen driving, Clemmons directed him to a car wash near a coffee shop in Lakewood. Upon arriving at the car wash, Allen parked the truck, got out, and walked across the street to a minimart. During that time, Clemmons also left the car wash and entered the coffee shop, where the shootings occurred. When Allen returned to the truck, Clemmons appeared and told Allen that they had to leave. Allen claimed he drove only a few blocks until he left the truck upon discovering Clemmons was wounded. Allen also claimed that he did not know Clemmons was going to commit the murders.
>
> Clemmons eventually ended up at his aunt's house, and the truck was abandoned in a nearby parking lot. A few days later, Clemmons was killed by a Seattle police officer. Allen was arrested shortly afterward.

*Allen I*, 182 Wn.2d at 369–70 (paragraph numbers omitted).

---

[1] The Court of Appeals noted that, while the pleadings in the case stated petitioner's first name as "Darcus," the petitioner uses the name "Dorcus" (which is the name used in his habeas petition). Dkt. 19-27 at 1 n.1.

REPORT AND RECOMMENDATION - 3

## II.   Procedural History

**A.   Trial**

    1.   Charges

Allen was charged in an Amended Information dated February 10, 2011 with four counts of "aggravated murder in the first degree." Dkt. 19-4, Counts I–IV. The trial court instructed the jury that Allen could be guilty of the charged crimes as an accomplice. Dkt. 19-6 at 11.

For each first degree murder count, Allen was also charged with two sets of aggravating circumstances. First, he was charged with two aggravating circumstances under Washington's Sentencing Reform Act, Chapter 9.94A RCW ("SRA aggravators"): (1) that each murder was committed against a victim known by the defendant to be a law enforcement officer who was performing his or her official duties at the time of the offense; and (2) that the defendant or an accomplice was armed with a firearm. Dkt. 19-4. If convicted of these aggravating circumstances, additional time would have been added to Allen's presumptive sentence on the underlying first degree murder charges. RCW 9.94A.533; RCW 9.94A.535.

Second, Allen was charged for each first degree murder count with two aggravating circumstances pursuant to Washington's Capital Punishment statute, Chapter 10.95 RCW ("Capital Punishment aggravators"). That statute provides that a defendant is guilty of the crime of aggravated first degree murder "if he or she commits first degree murder as defined by RCW 9A.32.030(1)(a) . . . and one or more . . . aggravating circumstances exist." RCW 10.95.020. The State charged two Capital Punishment aggravators: (1) that the victim was known or reasonably should be known by the defendant to be a law enforcement officer who was performing his or her official duties at the time of the killing; and (2) that there was more than one victim and the murders were part of a common scheme or plan. Dkt. 19-4; RCW 10.95.020. If convicted of the

1 | Capital Punishment aggravators, Allen would have been subjected to a life sentence without
2 | possibility of release or parole. RCW 10.95.030.

    2.    Verdicts

Allen's trial took place in May 2011. At the close of trial, the trial court dismissed other lesser included offenses (Dkt. 19-5 at 97) and instructed the jury to consider separately each of the four counts of first degree murder and to return a verdict of guilty or not guilty on each count. Dkt. 19-6 at 16–19. The jury was also given special verdict forms for each of the SRA aggravators and the Capital Punishment aggravators and was instructed to fill out these special verdict forms only if it found Allen guilty of any of the underlying first degree murder charges. Dkt. 19-6 at 25.

On May 19, 2011, the jury found Allen guilty on all counts of first degree murder. Dkts. 19-7–19-10. It also found Allen guilty of the SRA aggravators for all counts of first degree murder. Dkts. 19-11–19-18. However, the jury unanimously found Allen not guilty of the Capital Punishment aggravators for all counts of first degree murder. Dkts. 19-19–19-22.

**B.    Direct Appeal**

Allen brought a direct appeal, culminating in reversal in 2015 by the Washington Supreme Court due to prosecutorial misconduct during closing argument. *Allen I*, 182 Wn.2d at 382. The Washington Supreme Court also held that petitioner could be retried on the SRA aggravators, and remanded for a new trial. *Id*. at 387.

**C.    Interlocutory Appeal**

On remand, the State filed the same charges as in the first trial, including the Capital Punishment aggravators—even though the jury had unanimously found Allen not guilty of those aggravators. *State v. Allen*, 192 Wn.2d 526, 531 (2018) (*Allen II*). The trial court granted Allen's motion to dismiss the Capital Punishment aggravators on double jeopardy grounds and the Court

of Appeals affirmed on discretionary interlocutory review. *Id*. In an opinion dated December 13, 2018, the Washington Supreme Court also affirmed. *Id*.

The Washington Supreme Court acknowledged its prior precedent had held that because aggravating circumstances acted only to enhance the penalty for an offense, they were not elements of the offense itself and therefore not subject to double jeopardy principles. *Id*. at 534 (citing *State v. Kincaid*, 103 Wn.2d 304, 307 (1985)). However, the Washington Supreme Court held that in light of subsequent United States Supreme Court decisions that significantly changed "the legal underpinnings of our precedent," it was "compelled to revisit the issue." *Id*. The court noted that the United States Supreme Court has held that aggravating factors increasing the length of a sentence "must be treated as an element, not a sentencing factor, for Sixth Amendment purposes." *Id*. at 539 (citing *Alleyne v. United States*, 570 U.S. 99 (2013)). Although the United States Supreme Court has not yet definitively held the same limits apply for Fifth Amendment double jeopardy principles, the Washington Supreme Court in *Allen II* noted that a plurality had done so, which was consistent with other cases linking the Fifth Amendment and Sixth Amendment inquiries. *Id*. at 540–541 (citing *Sattazahn v. Pennsylvania*, 537 U.S. 101 (2003)). The Washington Supreme Court concluded that the foundation of its prior precedent treating aggravating circumstances as sentencing factors that did not implicate double jeopardy had "changed dramatically." *Id*. The Washington Supreme Court therefore held that the Capital Punishment aggravators "are elements of the offense of aggravated first degree murder for double jeopardy purposes." *Id*. at 544. As a result of the jury's unanimous verdict acquitting Allen of those Capital Punishment aggravators, "jeopardy terminated on those circumstances and the State is constitutionally barred from retrying them." *Id*. The Washington Supreme Court did

not discuss the SRA aggravators specifically in this second decision and "remand[ed] for further proceedings consistent with this opinion." *Id*.

### D. Proceedings on Remand

On remand, the State amended its information to charge Allen with four counts of first degree murder and the SRA aggravators—of which petitioner had previously been convicted—for each count. Dkt. 19-1. Allen brought motions in the trial court to dismiss the charges, arguing that collateral estoppel barred retrial of accomplice liability and that double jeopardy barred retrial of the first degree murder charges. Dkts. 19-23, 19-24. The trial court denied the motions. Dkt. 19-25. On discretionary review, Division Two of the Washington State Court of Appeals affirmed the trial court's denial of Allen's motions to dismiss, and the Washington Supreme Court denied discretionary review. Dkts. 19-27, 19-29.

Upon a subsequent motion by petitioner, the trial court granted petitioner's request to strike the SRA aggravator regarding crimes against law enforcement officers. Dkt. 19-31. The State is currently appealing the trial court's decision, and that issue is currently before Division Two on discretionary review (Dkt. 19-32) and is not addressed in the petition before this Court.

## DISCUSSION

### I. Standard of Review and Threshold Issues

Allen seeks relief pursuant to 28 U.S.C. § 2241, which is the appropriate habeas provision under which to raise a double jeopardy issue. Dkt. 7 at 1; *Wilson v. Belleque*, 554 F.3d 816, 821 (9th Cir. 2009). Section 2241 petitions are not reviewed under the deferential standard imposed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254(d). Instead, the Court must grant habeas relief if it "conclude[s] on de novo review that retrying [the petitioner] . . . would violate the Double Jeopardy Clause." *Wilson*, 554 F.3d at 828.

"As a prudential matter, courts require that habeas petitioners exhaust all available judicial and administrative remedies before seeking relief under § 2241." *Ward v. Chavez*, 678 F.3d 1042, 1045 (9th Cir. 2012). Here, respondent agrees—and the Court finds—that Allen has properly exhausted his state court remedies.

Another prerequisite to bringing a habeas claim is that the petitioner be "confined." Allen is currently incarcerated in Pierce County Jail awaiting retrial. Dkt. 7 at 5. He has met the confinement requirement.

Finally, Allen has not requested an evidentiary hearing, and respondent agrees that one is not needed. Dkt. 19 at 7. The Court agrees that the petition raises purely legal issues and can be resolved on the undisputed record. The Court granted respondent's request for oral argument on the legal issues, which was held on March 29, 2021. Dkt. 22.

## II. Collateral Estoppel

The Double Jeopardy Clause incorporates the doctrine of collateral estoppel. *Ashe v. Swenson*, 397 U.S. 436, 445–46 (1970). Collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Id*. at 436. In a criminal case, "collateral estoppel precludes the state from bringing a charge when a previous 'jury resolve[d], in a manner adverse to the government, an issue that the government would be required to prove in order to obtain a . . . conviction at the second trial.'" *Wilson*, 554 F.3d at 830 (quoting *United States v. Castillo-Basa*, 483 F.3d 890, 899 (9th Cir. 2007)).

The Ninth Circuit has enunciated a three-step process for evaluating collateral estoppel in a double jeopardy context:

> (1) An identification of the issues in the two actions for the purpose of determining whether the issues are sufficiently similar and sufficiently material in both actions to justify invoking the doctrine; (2) an examination of the record of the prior case

to decide whether the issue was "litigated" in the first case; and (3) an examination of the record of the prior proceeding to ascertain whether the issue was necessarily decided in the first case.

*Castillo-Basa*, 483 F.3d at 897. Further, a criminal defendant invoking collateral estoppel bears the burden of proving "that the issue whose relitigation he seeks to foreclose was actually decided in his favor" in the prior case. *Id*.

Allen contends that the jury's finding of not guilty on the "common scheme and plan" Capital Punishment aggravator precludes the State's accomplice liability theory. Allen argues that the State's theory of accomplice liability "hinged upon a plan" between Allen and Clemmons. Dkt. 7 at 13–14 (citing closing argument statements, including "if you just agree to help somebody plan it, you're an accomplice" (Dkt. 19-33 at 9); "this is a plan" (Dkt. 19-33 at 76); "[a]nd they had a plan, and it was a good plan" (Dkt. 19-33 at 80)). The State notes that "the jury found the petitioner guilty as an accomplice to the murders in his first trial while simultaneously finding him not guilty of the aggravating circumstance." Dkt. 19 at 12. The State argues that "the jury's split verdicts reflect that the legal proof required for accomplice liability is wholly distinct from the proof required for the 'common scheme or plan' aggravating circumstance—a verdict on one does not determine the verdict on the other." *Id*.

This Court agrees with the State. Petitioner's argument fails to properly connect the dots. Accomplice liability does not require the existence of a plan. And the "common scheme and plan" referenced in the Capital Punishment aggravator does not require an accomplice.

Instruction no. 8 for accomplice liability provides in pertinent part:

> A person is an accomplice . . . if, with knowledge that it will promote or facilitate the commission of the crime, he or she either:
>
> (1) Solicits, commands, encourages, or requests another person to commit the crime; or
> (2) Aids or agrees to aid another person in planning or committing the crime.

REPORT AND RECOMMENDATION - 9

Dkt. 19-6 at 11 (Instruction No. 8).

Although aiding another in "planning" can be one avenue of proving accomplice liability, it is not the only avenue. A defendant can also be found guilty as an accomplice in several other ways that do not involve planning—such as by soliciting, commanding, encouraging, requesting or aiding in the commission of a crime. The State's closing argument, for instance, focused on Allen providing aid in committing the crime by acting as the getaway driver. *See*, *e.g.*, Dkt. 19-33 at 5, 10, 13. The State did not argue that Allen aided in *planning* the crime.

While accomplice liability requires multiple participants, a "common scheme or plan" as defined by the Capital Punishment aggravator does not require multiple participants. Rather the Capital Punishment aggravator requires the linkage of a common scheme or plan among multiple *crimes*—not multiple participants. Jury Instruction No. 20, which defines a "common scheme or plan," makes this requirement clear.:

> The term "common scheme or plan" refers to an overarching criminal purpose which connects multiple *crimes* together. There must be some nexus between the *crimes*.

Dkt. 19-6 at 24 (emphasis added).

Restated again—the "common scheme or plan" does not require that there be multiple participants but does require multiple crimes; on the other hand, accomplice liability does not require multiple crimes, but does require multiple participants. The jury's not guilty verdict on the Capital Punishment aggravator establishes only that Allen did not connect "multiple crimes together" in a common scheme or plan. Dkts. 19-6 at 23 (Instruction 19); 19-6 at 24 (Instruction 20). Although the jury concluded that Allen was an accomplice to first degree murder (Dkts. 19-7–19-10), that verdict was vacated by the State Supreme Court for prosecutorial misconduct and will be the subject of the next trial—appropriately so.

Separately, the Capital Punishment aggravator regarding a "common scheme or plan" places an additional burden on the State that is absent from the requirements of accomplice liability. Instruction No. 19, regarding the aggravator, contains the following important requirement:

> For the aggravating circumstance to apply, the defendant must have been a major participant in acts causing the death of the victim and the aggravating factors must specifically apply to the defendant's actions.

Dkt. 19-6 at 23.

Thus, unlike accomplice liability, proof of the Capital Punishment aggravator placed an additional burden on the State; it was required to prove that Allen was a "major participant" in the scheme or plan and that the plan "specifically appl[ied] to [Allen]'s actions." This is markedly different from the more lenient accomplice liability standard, which requires only "knowledge that [defendant's conduct] will promote or facilitate the commission of the crime." Dkt. 19-6 at 11 (Instruction No. 8).

Accomplice liability and the Capital Punishment aggravator for participation in a common scheme or plan are legally distinct elements, subject to differing burdens of proof and addressing different facts. The issues are not "sufficiently similar" to invoke the doctrine of collateral estoppel. *See Castillo-Basa*, 483 F.3d at 897; *Wilson*, 554 F.3d at 830. Allen has not met his burden to establish that collateral estoppel bars his retrial on accomplice liability and his claim on this ground should be denied.

**III.  Double Jeopardy**

Petitioner, in his written materials and oral argument, repeatedly asserts that because the prosecution charged Allen with four counts of "aggravated first degree murder," and the jury acquitted Allen of both aggravating circumstances, which were elements of that offense, he cannot be tried again on the same charges. Dkt. 7 at 17–18, Dkt. 20, at 1–3. Indeed, the Double

Jeopardy Clause "'protects against a second prosecution for the same offense after acquittal.'" *Brown v. Ohio*, 432 U.S. 161, 165 (1977) (*quoting North Carolina v. Pearce*, 395 U.S. 711, 717 (1969)).

Respondent contends that the petitioner has *always* been charged with first degree murder as well as the Capital Punishment aggravators and the SRA aggravators. Although the jury acquitted him of the Capital Punishment aggravators, this does not vitiate the State's right to retry him on the underlying first degree murder charges. He was convicted of each of these charges. Indeed, "the double jeopardy guarantee 'imposes no limitations whatever upon the power to *retry* a defendant who has succeeded in getting his first conviction set aside.'" *United States v. DiFrancesco,* 449 U.S. 117, 131 (1980) (quoting *North Carolina v. Pearce,* 395 U.S. 711, 720 (1969)).

This Court agrees with respondent. "Aggravated first degree murder" includes separate elements of premeditated first degree murder and various aggravators. Because the jury was instructed on each separate element, and the jury returned verdicts on each separate element, Allen's acquittal on *some* of the elements, does not mean that jeopardy applies to *all* of the elements. Therefore, the double jeopardy clause does not prohibit Allen's retrial on those non-acquitted elements.

This Court's analysis begins with exactly what is meant by "aggravated first degree murder." Washington's statutes do not set out a separate crime of "aggravated first degree murder." Instead, the crime is an amalgamation of different elements.

> A person is guilty of aggravated first degree murder, a class A felony, if he or she commits first degree murder as defined by RCW 9A.32.030(1)(a), . . . and one or more of the following aggravating circumstances exist: . . . [list of aggravating circumstances].

RCW 10.95.020.

1    As the Washington Supreme Court noted, "[a]ggravated first degree murder is not a
2    crime in and of itself; the crime is 'premeditated murder in the first degree . . . accompanied by
3    the presence of one or more of the statutory aggravating circumstances listed in the criminal
4    procedure title of the code.'" *State v. Roberts*, 142 Wn.2d 471, 501 (2000) (quoting *State v.*
5    *Irizarry*, 111 Wn. 2d 591, 593–94 (1988) (emphasis deleted)).

6    Allen was clearly on notice that when he was charged with "aggravated first degree
7    murder," he was also being charged with the separate elements that comprised that charge,
8    including premeditated first degree murder and each of the various aggravators. This is borne
9    out by the jury instructions and verdict forms from petitioner's trial. The jury was instructed on
10   premeditated first degree murder and told to fill out verdict forms on that crime for each count.
11   Dkt. 19-6 at 13–19 (Instructions 10–16); Dkts. 19-7–19-10. So, for instance, the jury was
12   instructed on the elements of "Murder in the First Degree": "To convict the defendant of the
13   crime of Murder in the First Degree, as charged in Count I, each of the following elements of the
14   crime must be proved beyond a reasonable doubt. . . ." Dkt. 19-6 at 16 (Instruction No. 13). *See*
15   *also* Dkt. 19-6 at 13 (Instruction No. 10, defining "Murder in the First Degree"). Instruction No.
16   19, which defined the Capital Punishment aggravating circumstances, explained that "[i]f you
17   find the defendant guilty of any count of premeditated Murder in the First Degree as charged in
18   Counts I–IV, you must then determine whether any of the following aggravating circumstances
19   exist as to that count. . . ." Dkt. 19-6 at 23 (Instruction No. 19); Dkts. 19-15–19-18. This
20   structure necessitated a separate jury verdict on each of the four counts of premeditated first
21   degree murder and a separate jury verdict on each of the aggravators for each of the counts for
22   which the jury had found Allen guilty. The verdict forms that the jury returned for Counts I
23   through IV read as follows: "We, the jury, find the defendant Guilty of the crime of Murder in
24

the First Degree as charged in Count I[–IV].” Dkt. 19-7–19-10. The special verdict forms for the Capital Punishment aggravators read as follows: “We, the jury, having found the defendant guilty of premeditated Murder in the First Degree on verdict form I[–IV], return a special verdict by answering as follows as to Count I [–IV]. . . .” Dkt. 19-19–19-22.

The Washington Supreme Court has similarly acknowledged that Allen was convicted of premeditated first degree murder and the separate SRA aggravators. As the court explained in *Allen I*: “The jury convicted Allen of four counts of first degree murder. The jury also returned a special verdict form finding the aggravator alleged under RCW 9.94A.535(3)(v).” 182 Wn.2d at 373. Likewise, in *Allen II*: “Allen was convicted of four counts of first degree murder but acquitted of two RCW 10.95.020 [Capital Punishment] aggravating circumstances on each count.” 192 Wn.2d at 528–29.

Reinforcing this point, *Allen II* repeatedly distinguishes between the premeditated first degree murder charges and the Capital Punishment aggravating circumstances, focusing on the issue of whether those aggravating circumstance could be retried. *Id.* at 529 (“The question before us now is whether Allen can be tried a second time on the RCW 10.95.020 [Capital Punishment] aggravating circumstances. . . . We hold that retrial on the aggravating circumstances is barred by double jeopardy principles and thus affirm.”). The Washington Supreme Court framed the question in terms of the separate elements related to the Capital Punishment aggravators, as opposed to the other elements: “Because Allen was unanimously acquitted of the RCW 10.95.020 [Capital Punishment] aggravating circumstances at his first trial, we must now determine whether the constitutional prohibition on double jeopardy bars a retrial on these aggravating circumstances.” *Id.* at 533. The Washington Supreme Court answered its own question and determined that double jeopardy applied to those aggravating

circumstances: "[W]e hold that RCW 10.95.020 [Capital punishment] aggravating circumstances, which increase the mandatory minimum penalty for first degree murder, are elements of the offense of aggravated first degree murder for purposes of the double jeopardy clause. Therefore, Allen cannot be retried on the aggravating circumstances." *Id*. at 534. Importantly, the Court did not say that double jeopardy barred retrial on the first degree murder charges.

After *Allen II*, the trial court denied petitioner's post-remand motions to dismiss the aggravated murder charges based on double jeopardy, (Dkt. 19-25), which he appealed (Dkts. 19-26, 19-28) and the Washington Supreme Court denied discretionary review (Dkt. 19-29), further indicating that the Court did not accept petitioner's view of the scope of its previous *Allen II* decision. Further, the Washington Supreme Court has subsequently described its *Allen II* decision as holding that "double jeopardy bars retrial on aggravating circumstances under RCW 10.95.020 after acquittal," reinforcing that it is only those elements upon which jeopardy terminated. *State v. Whitaker*, 195 Wn.2d 333, 339 (2020).

Indeed, petitioner has not cited a single instance in which any court that has evaluated any aspect of this case has come to the conclusion that Allen was not facing charges of first degree murder and various aggravators.

The prior rulings by the Washington courts regarding double jeopardy by the Washington state courts are based on solid constitutional footings.

First, the United States Supreme Court has made it clear that double jeopardy applies "only if there has been some event, such as an acquittal, which terminates the original jeopardy." *Richardson v. United States*, 468 U.S. 317, 325 (1984).

1  Second, the United States Supreme Court has also made clear that sentencing factors that impact the range of potential sentence, are separate "elements" of the offense and must be determined by a jury. In *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the Court held that the Constitution entitles a criminal defendant to a jury determination that he is guilty of every element of the crime with which he is charged, beyond a reasonable doubt. *Id.* at 476. In *Alleyne v. United States*, 570 U.S. 99, 99–100 (2013), the Court concluded that any facts that increased the mandatory minimum sentence to which a criminal defendant is exposed was a separate element of the crime, and must be decided by a jury. Based on these holdings, the Washington Supreme Court in *Allen II* noted that "the [U.S.] constitution requires the aggravating circumstances to be proved to a jury beyond a reasonable doubt. The aggravating circumstances therefore no longer meet the definition of 'sentencing factors' for Sixth Amendment purposes. They are elements." 192 Wn.2d at 544. Therefore, a logical extension of that analysis is that jeopardy applied to the elements of the Capital Punishment aggravators because the jury unanimously acquitted petitioner of those elements.

As for the other elements, "aggravated first degree murder," as charged in the indictment, contained the "elements" of premeditated first degree murder. Premeditated first degree murder is, in essence, a "lesser offense" to charge of *aggravated* first degree murder.

Petitioner argues that "[t]he Double Jeopardy Clause bars any attempt to try a defendant for a lesser offense after he was acquitted of the greater offense." Dkt. 7 at 17. But the principle petitioner relies upon applies only if the jury is not instructed on the lesser offense, which is not the case here. "*If no instructions are given on lesser included offenses*, . . . acquittal on the crime explicitly charged necessarily implies an acquittal on all lesser offenses included within that charge." *United States v. Gooday*, 714 F.2d 80, 82 (9th Cir. 1983) (emphasis added). Here, as

discussed above, the jury was directly instructed upon the "lesser offense" of premeditated first degree murder—and found petitioner guilty. Dkt. 19-6 at 13, 16; Dkts. 19-7–19-10. When the jury has been instructed on lesser included offenses in the same proceeding, as they were here, acquittal on greater charges does not bar retrial on the lesser offenses. *Gooday*, 714 F.2d at 83; *Wilson*, 554 F.3d at 831.

Other federal cases discussing the question of retrial of a base offense after an acquittal of aggravating factors indicate that the base offense and the aggravating factors should be treated independently. Jeopardy does not apply to both, even if it applies to one or the other. For instance, the United States Supreme Court, in a plurality opinion, held that first degree murder is "properly understood to be a lesser included offense of 'first-degree murder plus aggravating circumstance(s).'" *Sattazahn v. Pennsylvania*, 537 U.S. 101, 113 (2003). The Court upheld a capital conviction even though a previous jury was unable to reach a verdict on the aggravating circumstance. The Court noted,

> Thus, when petitioner appealed and succeeded in invalidating his conviction of the lesser offense, there was no double-jeopardy bar to Pennsylvania's retrying petitioner on both the lesser and the greater offense; his 'jeopardy' never terminated with respect to either.

*Sattazahn*, 537 U.S. at 113.

*Accord United States v. Candelario-Santana*, 977 F.3d 146, 155 (1st Cir. 2020) (The jury reached an ambiguous verdict during the sentencing phase, which terminated jeopardy on the question of the death penalty, but this did not prevent the retrial of the defendant on the underlying murders.).

In summary, federal case law supports the proposition that an acquittal on aggravating factors does not terminate jeopardy on the underlying premeditated first degree murder charges, so long as the underlying offense was fully disclosed to the defendant in the previous trial and

1  the jury did not acquit him of the underlying offense—which is exactly what happened here.

2  Thus, Allen may be retried on the offense of premeditated first degree murder.

**CERTIFICATE OF APPEALABILITY**

State prisoners seeking post-conviction relief under 28 U.S.C. § 2241 may appeal a district court's dismissal of the federal habeas petition only after obtaining a certificate of appealability (COA) from a district or circuit judge. 28 U.S.C. § 2253(c)(2); *Wilson*, 554 F.3d at 824-25. A certificate of appealability may issue only if petitioner has made "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). Petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Pursuant to this standard, this Court concludes that petitioner is entitled to a certificate of appealability with respect to both of the grounds raised in this petition. The Court also concludes that petitioner should retain *in forma pauperis* status in the event of any appeal.

**CONCLUSION**

For the reasons discussed above, the Court recommends that the petition in this matter be denied, and this action be dismissed with prejudice.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Miranda v.*

*Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on May 14, 2021, as noted in the caption.

Dated this 23rd day of April, 2021.

J. Richard Creatura
Chief United States Magistrate Judge